IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRITISH AIRWAYS PLC, | ) | **Case No.** |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| vs. | ) | **05 - 11477 GAO** |
| | ) | |
| SIGNATURE FLIGHT SUPPORT | ) | |
| CORPORATION, and its subsidiaries, and | ) | |
| AIRCRAFT SERVICE INTERNATIONAL | ) | RECEIPT # |
| GROUP, INC., and its subsidiaries and/or | ) | AMOUNT $ 250.00 |
| affiliated companies, | ) | SUMMONS ISSUED 3 |
| | | LOCAL RULE 4.1 — |
| Defendants. | | WAIVER FORM — |
| | | MCF ISSUED — |
| ------------------------------------------------------- | | BY DPTY. CLK. |
| | | DATE 7/12/05 |

COMES NOW BRITISH AIRWAYS PLC ("BRITISH AIRWAYS"), as Plaintiff by and

through its undersigned attorneys, and for its causes of action against the defendants states as

follows:

MAGISTRATE JUDGE _Sorokin_

## PARTIES AND JURISDICTION

1.    Plaintiff BRITISH AIRWAYS is a foreign corporation duly organized and

existing under the laws of the United Kingdom of Great Britain and Northern Ireland and has its

principal place of business at Harmondsworth, Middlesex, England.

2.    Plaintiff BRITISH AIRWAYS is a foreign air carrier engaged in the international

transportation of passengers and cargo for hire and operates flights to and from Logan

International Airport in Boston, Massachusetts.

3.     Defendant SIGNATURE FLIGHT SUPPORT CORPORATION and its subsidiaries ("SIGNATURE") is a corporation organized and existing under the laws of Delaware with its principal place of business in Florida.

4.     Defendant SIGNATURE does business in the State of Massachusetts and at all times material hereto performed services at Logan International Airport in Boston, including fueling aircraft operated by BRITISH AIRWAYS.

5.     Defendant AIRCRAFT SERVICE INTERNATIONAL GROUP, INC. and its subsidiaries and/or affiliated companies ("ASIG") is a corporation organized and existing under the laws of Delaware with its principal place of business in Florida.

6.     Defendant ASIG does business in the State of Massachusetts and at all times material hereto performed services at Logan International Airport in Boston, including fueling aircraft operated by BRITISH AIRWAYS.

7.     Diversity jurisdiction exists over this action pursuant to 28 U.S.C. § 1332(a) because plaintiff is a citizen of a foreign state and defendants are citizens of the United States and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8.     Venue in this Court is proper under 28 U.S.C. § 1391(a) because the defendants have corporate residences in Massachusetts, the events or omissions giving rise to this claim occurred at Logan International Airport in Massachusetts, and defendants are subject to jurisdiction in Massachusetts.

2

## GENERAL ALLEGATIONS

9.     On or about June 1, 1993, plaintiff BRITISH AIRWAYS entered into an "Into-Plane Fuel Service Agreement" ("Agreement") with SIGNATURE, which was in full force and effect on July 13, 2002. *See* Exhibit "A".

10.    Pursuant to the Agreement, SIGNATURE, individually or by or with its subsidiaries, was required to store fuel for BRITISH AIRWAYS and provide into-plane fueling services for aircraft operated by BRITISH AIRWAYS at various airports, including Logan International Airport in Boston, Massachusetts.

11.    Defendant SIGNATURE provided into-plane fueling services for aircraft operated by BRITISH AIRWAYS at Logan International Airport.

12.    Defendant ASIG provided into-plane fueling services for aircraft operated by BRITISH AIRWAYS at Logan International Airport.

13.    Plaintiff BRITISH AIRWAYS is the owner of a Boeing B-777 aircraft, U.K. Reg. No. G-VIIY (the "Aircraft").

14.    On the morning of July 13, 2002, the Aircraft was at Gate No. 7A of Terminal E at Logan Airport preparing for departure to London/Heathrow Airport as BA Flight 238.

15.    On the aforementioned date, at or about 7:45 a.m. EDT, an agent and/or employee of SIGNATURE was driving a hydrant truck, Vehicle Registration MP#0636, (the "Vehicle") and, during the course of aircraft refueling operations, caused it to strike the BRITISH AIRWAYS Aircraft forcefully in the vicinity of the outboard engine cowl of the left hand No. 1 position engine.

16.    The Vehicle involved in the incident was owned or leased by SIGNATURE.

3

17.     On the aforementioned date, at or about 7:45 a.m. EDT, an agent and/or employee of ASIG was driving the Vehicle and, during the course of aircraft refueling operations, caused it to strike the BRITISH AIRWAYS Aircraft forcefully in the vicinity of the outboard engine cowl of the left hand No. 1 position engine.

18.     The Vehicle involved in the incident was owned or leased by ASIG.

19.     The impact resulted in damage to the Aircraft, including a large tear about eighteen inches long stretching from the rear to the forward duct panel on the outboard half of the left engine cowl.

20.     These panels are made of special carbon fiber materials that shield the "D" duct and engine thrust reverser sleeve.

21.     As a result of the damage, BA Flight 238 had to be cancelled and the Aircraft had to be removed from service for several days.

22.     The original engine manufacturer had no repair scheme for such extensive damage. Temporary repairs were made to allow the Aircraft to be ferry flown to London, where techniques were devised for permanent repairs.

23.     As a result of the foregoing, plaintiff BRITISH AIRWAYS sustained monetary damages, including, but not limited to, damages for repair and ferrying of the Aircraft, damages caused by the cancellation of BA Flight 238, diminution of value of the Aircraft, loss of use of the Aircraft, lost profits and other damages to be proven at trial and totaling at least Five Hundred Thousand Dollars ($500,000), which plaintiff is entitled to recover with interest.

24.     Defendant SIGNATURE does not dispute liability for the damage sustained to the BRITISH AIRWAYS Aircraft.

4

25.    Defendant AISIG does not dispute liability for the damage sustained to the BRITISH AIRWAYS Aircraft.

## FIRST CLAIM FOR RELIEF AS TO SIGNATURE AND ASIG
### (Negligence)

26.    Plaintiff BRITISH AIRWAYS repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 25 inclusive of this Complaint with the same force and effect as if herein set forth in full.

27.    At all relevant times, plaintiff BRITISH AIRWAYS was exercising all due care and caution for its own safety and the safety of others.

28.    On July 13, 2002, defendants, individually and/or jointly, caused damage to plaintiff's Aircraft through the negligent acts of their agents and/or employees, including, but not limited to, failing to exercise a reasonable and proper degree of care in the operation of the Vehicle; failing to consider the consequences of operating the Vehicle negligently in the vicinity of the Aircraft; failing to provide adequate supervision; failing to provide adequate training; failing to comply with applicable procedures, rules, regulations and laws; and failing to provide personnel to marshal the vehicle to and from the Aircraft.

29.    As a result of the defendants' negligence, plaintiff's Aircraft sustained damage, necessitating repairs and removal of the Aircraft from service.

30.    As a direct and proximate cause of defendants' negligence, plaintiff BRITISH AIRWAYS has sustained monetary damages of at least Five Hundred Thousand Dollars ($500,000), including damages for repair and ferrying of the Aircraft, damages caused by the cancellation of BA Flight 238, diminution in value of the Aircraft, loss of use of the Aircraft, lost

5

profits, and other special damages in an amount to be proven at trial and which plaintiff has a right to recover in this action together with interest.

## SECOND CLAIM FOR RELIEF AS TO SIGNATURE AND ASIG
### (Gross Negligence)

31.     Plaintiff BRITISH AIRWAYS repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 30 inclusive of this Complaint with the same force and effect as if herein set forth in full.

32.     At all relevant times, plaintiff BRITISH AIRWAYS was exercising all due care and caution for its own safety and the safety of others.

33.     On July 13, 2002, defendants, individually and/or jointly, caused damage to plaintiff's Aircraft through the grossly negligent, dangerous, and reckless acts of their agents and employees, who acted with a reckless disregard for the safety of others, including, but not limited to, recklessly operating the Vehicle; recklessly disregarding the known consequences of operating a motorized vehicle unsafely in the vicinity of the Aircraft; recklessly and knowingly failing to provide adequate supervision; recklessly and knowingly failing to provide adequate training; and recklessly failing to provide personnel to marshal the vehicle to and from the Aircraft despite knowledge of the dangerous consequences thereof.

34.     Defendants' gross negligence and recklessness caused plaintiff's Aircraft to sustain damage, necessitating repairs and removal of the Aircraft from service.

35.     As a direct and proximate cause of the negligence and recklessness of defendants, plaintiff BRITISH AIRWAYS has sustained monetary damages of at least Five Hundred Thousand Dollars ($500,000), including damages for repair and ferrying of the Aircraft, damages caused by the cancellation of BA Flight 238, diminution in value of the Aircraft, loss of use of

6

the Aircraft, lost profits, and other special damages in an amount to be proven at trial and which plaintiff has a right to recover in this action together with interest.

## THIRD CLAIM FOR RELIEF AS TO SIGNATURE ONLY
### (Contract)

36.    Plaintiff BRITISH AIRWAYS repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 35 inclusive of the within Complaint with the same force and effect as if herein set forth in full.

37.    In the "Into-Plane Fuel Service Agreement" between plaintiff and defendant SIGNATURE, defendant SIGNATURE agreed, *inter alia*, that it would provide services in a good and workmanlike manner; that only trained and competent personnel under defendant SIGNATURE's sole direction would undertake to provide such services; that the services would meet or exceed applicable governmental and airport rules, regulations, and requirements; that the services were to be performed in a safe, orderly, workmanlike manner in accordance with all applicable standards and practices as defined in BRITISH AIRWAYS' Fueling Manual; that all precautions would be taken to prevent damage to BRITISH AIRWAYS' aircraft; and that current safety precautions at the time and place of fueling would be followed.

38.    Defendant SIGNATURE failed, *inter alia*, to provide services in a good and workmanlike manner; failed to provide trained and competent personnel under SIGNATURE's sole direction to perform such services; failed to provide services that met or exceeded applicable governmental and airport rules, regulations, and requirements; failed to perform services in a safe, orderly, workmanlike manner in accordance with all applicable standards and practices as defined in BRITISH AIRWAYS' Fueling Manual; failed to take all precautions to prevent

7

damage to BRITISH AIRWAYS' aircraft; and failed to comply with current safety precautions

Logan International Airport on the morning of July 13, 2002.

39. Defendant SIGNATURE's breach of its contractual obligations caused damage to the Aircraft, necessitating repairs and removal of the Aircraft from service.

40. As a direct and proximate cause of defendant SIGNATURE's breach of contract, plaintiff BRITISH AIRWAYS has sustained monetary damages of at least Five Hundred Thousand Dollars ($500,000), including damages for repair and ferrying of the Aircraft, damages caused by the cancellation of BA Flight 238, diminution in value of the Aircraft, loss of use of the Aircraft, lost profits, and other special damages in an amount to be proven at trial and which plaintiff has a right to recover in this action together with interest.

## FOURTH CLAIM FOR RELIEF AS TO SIGNATURE ONLY
### (Express Warranty)

41. Plaintiff BRITISH AIRWAYS repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 40 inclusive of the within Complaint with the same force and effect as if herein set forth in full.

42. In the "Into-Plane Fuel Service Agreement" between plaintiff and defendant SIGNATURE, defendant SIGNATURE warranted, *inter alia*, that it would provide services in a good and workmanlike manner; that only trained and competent personnel under SIGNATURE's sole direction would undertake to provide such services; that the services would meet or exceed applicable governmental and airport rules, regulations, and requirements; that the services would be performed in a safe, orderly, workmanlike manner in accordance with all applicable standards and practices as defined in BRITISH AIRWAYS' Fueling Manual; that all precautions would be

8

NYOFFICE 637945v1

taken to prevent damage to BRITISH AIRWAYS' aircraft; and that current safety precautions at the time and place of fueling would be followed.

43.     Defendant SIGNATURE failed, *inter alia*, to provide services in a good and workmanlike manner; failed to provide trained and competent personnel under SIGNATURE's sole direction to perform such services; failed to provide services that met or exceeded applicable governmental and airport rules, regulations, and requirements; failed to perform services in a safe, orderly, workmanlike manner in accordance with all applicable standards and practices as defined in BRITISH AIRWAYS' Fueling Manual; failed to take all precautions to prevent damage to BRITISH AIRWAYS' aircraft; and failed to comply with current safety precautions at Logan International Airport on the morning of July 13, 2002.

44.     Defendant SIGNATURE's breach of its express warranty caused damage to the Aircraft, necessitating repairs and removal of the Aircraft from service.

45.     As a direct and proximate cause of defendant SIGNATURE's breach of warranty, plaintiff BRITISH AIRWAYS has sustained monetary damages of at least Five Hundred Thousand Dollars ($500,000), including damages for repair and ferrying of the Aircraft, damages caused by the cancellation of BA Flight 238, diminution in value of the Aircraft, loss of use of the Aircraft, lost profits, and other special damages in an amount to be proven at trial and which plaintiff has a right to recover in this action together with interest.

## FIFTH CLAIM FOR RELIEF AS TO SIGNATURE ONLY
### (Implied Warranty)

46.     Plaintiff BRITISH AIRWAYS repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 45 inclusive of the within Complaint with the same force and effect as if herein set forth in full.

9

47.     At the time plaintiff and defendant SIGNATURE entered into the "Into-Plane Fuel Service Agreement," plaintiff made known, and defendant SIGNATURE was aware of, the professional skills required for fueling large aircraft, and defendant SIGNATURE impliedly warranted to the plaintiff that it would employ only competent, trained, and properly licensed personnel to provide the required services, that these personnel would perform all fueling services in a professional and workmanlike manner and that these personnel would be provided with adequate support and assistance.

48.     Defendant SIGNATURE failed to provide competent, trained, and properly licensed personnel, failed to perform fueling services in a professional and workmanlike manner, and failed to provide adequate support and assistance to its personnel in the performance fueling services for the Aircraft as warranted.

49.     Defendant SIGNATURE's breach of its implied warranties caused damage to the Aircraft, necessitating repairs and removal of the Aircraft from service.

50.     As a direct and proximate cause of defendant SIGNATURE's breach of warranty, plaintiff BRITISH AIRWAYS has sustained monetary damages of at least Five Hundred Thousand Dollars ($500,000), including damages for repair and ferrying of the Aircraft, damages caused by the cancellation of BA Flight 238, diminution in value of the Aircraft, loss of use of the Aircraft, lost profits, and other special damages in an amount to be proven at trial and which plaintiff has a right to recover in this action together with interest.

## JURY DEMAND

Plaintiff demands trial by jury on all issues in this matter.

10

## REQUEST FOR RELIEF

WHEREFORE, plaintiff BRITISH AIRWAYS PLC prays for judgment against defendants, jointly and severally, awarding:

1. Compensatory damages in a sum to be determined at trial, but in no event less than Five Hundred Thousand Dollars ($500,000);

2. Pre-judgment interest; and

3. An award to the plaintiff of the costs of suit and post-judgment interest, with respect to each and every claim for relief, and also an award to the plaintiff of the costs of suit, attorneys' fees, post-judgment interest and any other relief to which plaintiff may be entitled and which the Court deems just and proper.

                                      Respectfully submitted,
CAMPBELL, CAMPBELL & EDWARDS

By: _Richard P. Campbell_
Richard P. Campbell BBO#071600
Kathleen M. Guilfoyle BBO#546512
One Constitution Plaza
Boston, Massachusetts 02129
(617) 241-3000

              - and –

CONDON & FORSYTH LLP
Diane Westwood Wilson
Times Square Tower
7 Times Square
New York, New York 10036
Tel: (212) 490-9100
Fax: (212) 370-4453

Attorneys for Plaintiff
BRITISH AIRWAYS PLC

11

# EXHIBIT A

INTO-PLANE FUEL SERVICE AGREEMENT

between



SIGNATURE FLIGHT SUPPORT CORPORATION
and its subsidiaries

and

BRITISH AIRWAYS PLC

covering

the locations set forth in the Schedules attached hereto

effective

June 1, 1993

INTO-PLANE FUEL SERVICE AGREEMENT

AGREEMENT made this 1st day of June, 1993, by and between BRITISH AIRWAYS PLC, with a mailing address of 820 Gessner Road, Suite 840, Houston, Texas 77024 ("Carrier") and SIGNATURE FLIGHT SUPPORT CORPORATION, a Delaware corporation, and its subsidiaries, with its principal offices at Signature Plaza, 201 South Orange Avenue, Suite 1100, Orlando, Florida 32801 ("Signature").

1.     Location and Services.   Carrier agrees to purchase from Signature, and Signature agrees to furnish Carrier all of Carrier's requirements for into-plane fueling services ("Services") as defined at the airport locations specified in the Schedules annexed to this Agreement (collectively, the "Airport"), according to the rates, terms, and conditions specified herein.

2.     Term.   This Agreement shall take effect June 1, 1993, and shall remain in effect, unless stated otherwise in any annexed Schedule of Charges, until canceled or amended by either party with thirty (30) days written notice to the other. It is mutually agreed that the effective date for the rates and charges at each annexed Airport shall be that date which appears on the applicable Schedule of Charges with the rates remaining in effect until modified in accordance with the terms and conditions as set forth herein. It is understood that the applicability of this Agreement is at all times predicated on Carrier's and Signature's continuing authority and/or discretion to operate at the Airport.

It is mutually agreed the terms and conditions of this Agreement, exclusive of intoplane fees, shall be applicable and considered binding upon all ad-hoc, diversion or otherwise unscheduled operations conducted by the Carrier at those Airports which do not routinely handle or receive Carrier's aircraft and which are not otherwise included in the Schedules annexed to this Agreement but, upon Carrier's specific notification, may be requested and/or required to perform fueling or other aircraft servicing duties. Into-plane fees for such unscheduled operations shall be determined by applicable local Signature management.

It is further agreed between the parties that all provisions of this Agreement, inclusive of applicable pricing at each of the Airports annexed hereto, shall be applicable and binding upon the Carrier's subsidiary companies, with the Carrier and the Carrier's subsidiary companies hereinafter collectively referred to as the "Carrier".

2

3a.    Fuel Source, Facilities, and Services Defined ( For Airports With Fuel Farms Under the Direct Control of Signature). The Services to be provided by Signature are generally described as the storage of Carrier's fuel and the subsequent delivery of such fuel into Carrier's aircraft at the Airport. With specific reference to the Services to be furnished and received respectively, Signature and the Carrier acknowledge and represent the following terms and conditions:

A) The Services provided by Signature shall be performed in a good and workmanlike manner and shall be undertaken by trained and competent personnel directed solely by Signature.

B) Signature shall ensure that an adequate supply of mobile refueling equipment is properly maintained and available at all times to meet the operational requirements of the Carrier.

C) Signature shall be responsible for obtaining Turbine/Jet A Fuel (hereinafter, " Fuel ") from Carrier's designated Fuel supplier and making such Fuel available to the Carrier at designated times.

D) The selection of fuel suppliers shall remain the exclusive province of the Carrier at all times. Carrier shall be responsible for notifying Signature as soon as possible of a Fuel supplier change. Such notification shall be in writing.

E) Signature warrants that it shall maintain the fuel storage system (hereafter, " System ") into which Carrier's Fuel will be delivered, stored and inventoried in accordance with local, state and federal regulations and shall perform all regular and periodic quantity and quality control checks in accordance with Signature, Carrier and federal guidelines.

F) Signature shall be responsible for assuring that such Fuel is available for the Carrier's account in sufficient quantities to adequately service Carrier's aircraft prior to the required deliveries to the Carrier's aircraft. In the event Fuel is not available in sufficient quantities to meet the requirements of the Carrier, Signature shall inform the Carrier as soon as possible. Carrier shall advise Signature promptly and in writing of replacement Fuel supplier or Signature shall have the option of refusing deliveries to Carrier's aircraft commensurate with the depletion of Carrier's Fuel supply in the System unless such Fuel shortfall is the result of the negligence of Signature.

G) Signature shall ensure that all Fuel deliveries made to the System conform to meet ASTM D-1655 specifications with latest revisions and shall perform all required pre-acceptance testing of such Fuel in conjunction therewith. Signature shall refuse any Fuel delivery which does not meet such minimum specifications. Signature shall notify the Carrier as soon as possible should such rejection occur.

H) It is mutually agreed that any gain or loss of Carrier's Fuel, as calculated by Signature at the end of each calendar month, in excess of one quarter of one percent (0.25%) of the Carrier's thruput volume, shall be explained to the reasonable satisfaction of the Carrier on an annual basis. Signature shall not be liable for losses of Carrier's Fuel in excess of one-quarter of one percent (.25%) while the Fuel is in Signature's custody except and to the extent such loss(es) are caused solely by Signature's negligence or willful misconduct. Such acceptable losses shall include temperature correction, quality control procedures, evaporation and sumping. It is further agreed that all gains or losses in excess of one quarter of one percent (0.25%) shall be shared proportionately on a monthly basis with all fuel inventory holders of Signature's System.

3

(I) Carrier acknowledges that its Fuel will be commingled with fuel of other carriers within the System. Signature warrants and represents all commingled Fuel shall meet the specifications set forth herein.

(J) For purposes of this Agreement, custody or control of Carrier's Fuel shall be deemed to have passed from Carrier to Signature upon transfer of the Fuel into Signature's System ( or Signature's mobile fueling equipment at those locations where Signature does not maintain, manage or otherwise control the System where Carrier's Fuel is stored). Transfer of custody and control of the Fuel from Signature to the Carrier shall be deemed to have passed at the wing of Carrier's aircraft.

K) Carrier shall have the right at all reasonable times to review and inspect any and all records and conduct any independent quality control testing to confirm Signature's System, refueling equipment and procedures are in accordance with the terms and conditions set forth herein and Carrier's prevailing standards.

L) The Carrier shall provide to Signature an up to date approved copy of all applicable Fueling Manuals. Applicable revisions to the Fueling Manual shall be supplied by the issuing party to Signature in a timely manner.

M) Carrier agrees to reimburse Signature for recovery of actual costs incurred as a result of initial or recurrent training of Signature personnel consistent with the requirements and mandates set forth by the Federal Aviation Administration and/or Carrier's Fueling Manual at the Airports incorporated within this Agreement.

N) The Carrier shall provide flight schedule changes to Signature in writing and with as much advance notice as is possible.

O) Upon receipt of Carrier's fuel loading slips from authorized representatives of the Carrier, specifying, in writing, (i) the Fuel and amounts required, (ii) the flight numbers of requested deliveries, and (iii) the aircraft numbers of the Carrier's aircraft to be serviced, Signature agrees that it shall deliver Fuel into Carrier's aircraft as promptly as practical, consistent with Carrier's operating schedule, provided, however, that the obligation of Signature to perform is contingent on the availability of Fuel from Carrier's supplier(s) and provided further that Signature shall not be liable for any claims, costs or liability for any failure on its part to perform if such failure results from causes beyond its reasonable control.

P) Signature agrees to adhere to Carrier's fuel specifications and technical requirements as set forth in Exhibit A attached hereto and incorporated herein to the extent such specifications and guidelines do not encroach upon or otherwise infringe, negate or violate any existing Airport or Federal Aviation Administration regulation or guideline.

3b.     Limitation of Signature's Responsibilities and Liabilities at Certain Airports. Notwithstanding the responsibilities of Signature as set forth in Sub-Paragraph 3a, Carrier acknowledges and understands Signature's limited interaction, management and/or operational/inventory control of the System at those Airports so designated within the applicable

4

Schedule of Charges attached hereto. Carrier further acknowledges, cognizant of Signature's non-operator status of such designated Systems, under no circumstances shall Signature be held liable for operational, maintenance or Fuel quantity or quality deficiencies of same, and Carrier agrees to indemnify, save and hold harmless Signature, its officers, directors and employees, from and against any and all claims which may arise as a result of Signature's inability to access, operate and/or otherwise obtain Carrier's Fuel from such designated Systems.

Consistent with the preceding limitation and prevailing Airport operational parameters, Carrier shall, when or where applicable, maintain primary responsibility for procurement of Fuel from its selected supplier(s) and making such Fuel available to Signature at such Airports.

4.    Rates and Charges.  Signature shall supply the Services to Carrier at the rates and charges specified in Schedule I. All rates and charges herein are quoted in U.S. Dollars. In addition, when Signature is charged by law or contract with collection of same, Carrier shall pay to Signature all applicable concession, storage, through-put or other fees imposed on said flights by the governing agency of the Airport, together with any sales, use, excise, or other taxes imposed by any governmental jurisdiction by virtue of said flights. Such payments shall be remitted in the same manner as payments for Services. This obligation shall not be construed to apply to any taxes paid by Signature on its net profits or on any fixed property rentals or property taxes imposed on Signature.

Carrier acknowledges that the rates set forth in Schedule I are based on the Carrier's flight schedule in place on the Schedule's effective date. Signature and Carrier reserve the right to request a renegotiation of the prevailing rates in the event of Carrier changing the flight schedule or aircraft type upon which the Schedule I rates are based.

5.    Payment.  Signature shall periodically invoice Carrier for the fees for Services, taxes, and other charges due hereunder. Payments shall be made in accordance with the terms set forth in Schedule II.

If Signature determines that Carrier's credit worthiness is adversely changing, then Signature, upon thirty (30) days prior written notice to Carrier, shall have the right to request a change in payment terms. If Carrier and Signature cannot reach agreement on new payment terms within thirty (30) days thereafter, then Signature shall have the option of terminating the Agreement immediately.

5

In the event invoices are not paid by Carrier as set forth in Schedule II, Signature reserves the right to impose a late fee of one and one-half percent (1.5%) per month which shall be added to the amount due and owing to Signature.

6.      Standards.   The Services furnished by Signature hereunder shall meet or exceed applicable governmental and airport rules, regulations, and requirements and are to be performed in a safe, orderly and workmanlike manner in accordance with all applicable standards and practices as defined in the Carrier's Fueling Manual.

7.      Scheduling.   Signature agrees to provide into-plane fueling services to all scheduled flights by Carrier at the Airport and to use its best efforts to provide such services to any unscheduled flight by Carrier at the Airport.

8.      Priority.   In the case of multiple handling, Signature reserves the right to accord priority to aircraft operating on schedule.

9.      Emergencies.   In the event of emergencies related to the Services furnished herein, including but not limited to fuel spills, Signature shall without delay and without waiting for instructions from the Carrier undertake all reasonable steps to initiate corrective action consistent with Airport, State, Local and Federal guidelines. In such event, Carrier agrees to compensate Signature its reasonable charges for services rendered when determined such emergency situation was caused by Carrier's acts or omissions.

10.     Employment Insurance and Taxes.   Signature agrees that its personnel furnishing the Services to Carrier hereunder shall be covered by statutory workers' compensation insurance and shall be employees of Signature under the provisions of applicable local, state, or Federal unemployment compensation laws and other social security legislation, and further agrees to hold Carrier, its directors, officers, employees, agents and assigns harmless from any and all taxes, contributions, or assessments imposed pursuant to any such laws by virtue of such employment.

11.     Indemnification.   Signature agrees to fully indemnify, save and hold harmless Carrier, the Airport and their respective directors, officers, employees, agents and assigns from and against all claims and actions, including those arising from and in conjunction with fuel spills, and all expenses and fees incidental to the investigation and defense thereof, arising out of Signature's acts or omissions, or the acts or omissions of its directors, officers, employees, agents or assigns in connection with the

6

Services which are the subject of this Agreement, except where such claims or actions arise from the sole negligence or willful misconduct of the Carrier.

Carrier agrees to fully indemnify, save and hold harmless Signature, the Airport and their respective directors, officers, employees, agents and assigns from and against all claims and actions, including those arising from and in conjunction with fuel spills, and all expenses and fees incidental to investigation and defense thereof, arising out of Carrier's acts or omissions, or the act or omissions of its directors, officers, employees, agents or assigns in connection with this Agreement, except where such claims or actions arise from the sole negligence or willful misconduct of Signature.

The termination of this Agreement shall not affect any rights or obligations which shall have accrued prior to the effective date of such termination.

12. Force Majeure. Neither Signature nor the Carrier shall be responsible for loss or injury due to strikes, riots, acts of God, legal action of public authorities, or which are due to actions or events which cannot reasonably be anticipated or avoided or which are beyond the control of either party, respectively.

13. Insurance. Signature agrees that it will obtain and keep in full force and effect insurance coverage as set forth in Schedule II annexed hereto.

Carrier shall procure and keep in full force and effect "all risk" type hull insurance on the aircraft and engines, including the operation and maintenance of same.

Carrier and its insurers agree to waive their rights of subrogation in favor of Signature with respect to loss or damage resulting from the services to be performed by Signature hereunder, except where loss or damage results from the sole negligence or willful misconduct of Signature.

Carrier shall also procure and keep in full force and effect policies of aircraft and comprehensive general liability insurance with respect to its aircraft, operations, and maintenance.

The policies of Signature and the Carrier shall be endorsed to cover the indemnity and hold harmless obligations of Carrier to Signature and Signature to Carrier hereunder and shall contain customary clauses providing thirty (30) days written notice to either party of cancellation or modification. All such insurance shall be from insurers and in such amounts as are acceptable to both parties and shall name the respective opposite party and the Airport as additional insureds on liability

7

policies. Prior to the commencement of Services under this Agreement, Signature and Carrier shall furnish certificates to each other evidencing such insurance at the address set forth herein. Prior to the effective date of any modification or replacement of any such insurance, the affected party shall furnish certificates evidencing such modification or replacement to the other party.

Signature and the Carrier are named as additional insured on each other's insurance, but solely with respect to liability arising from each party's respective negligent acts or omissions in performance of this Agreement. Notwithstanding the foregoing Signature endorsement, Signature shall name Carrier as an additional insured under the insurance policies described herein, but the scope of coverage provided to Carrier shall be limited to coincide with Signature's obligation to indemnify, defend and hold harmless Carrier pursuant to the provisions of Paragraph 11, and shall be subject to all coverage limitations, exclusions, definitions, conditions, endorsements and other requirements, limitations and obligations set forth in Signature's insurance policies. Nothing contained in said policies shall be construed to expand the coverage provided to Carrier beyond the scope of Signature's obligation to defend, indemnify and hold harmless Carrier pursuant to the indemnity provisions of Paragraph 11.

THE PARTIES HEREBY AGREE THAT UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES, WHETHER IN CONTRACT OR TORT (INCLUDING STRICT LIABILITY AND NEGLIGENCE), SUCH AS, BUT NOT LIMITED TO, LOSS OF REVENUE OR ANTICIPATED PROFITS. SIGNATURE AGREES TO ASSUME LIABILITY FOR ANY DIRECT DAMAGES CAUSED BY THE SOLE NEGLIGENCE OF ITS EMPLOYEES, DIRECTORS OR OFFICERS.

14.    Entire Agreement/Applicable Law.  This Agreement constitutes the entire Agreement of the parties and no modification, waiver, or change to this Agreement shall be effective unless in writing and executed by both parties hereto.  This Agreement shall be binding on the parties and their respective successors and assigns and shall be governed by and construed in accordance with the laws of the State where the Services are performed.

15.    Assignment.  This Agreement is not assignable by either party and any attempts to procure and/or consummate such transactions shall be considered null and void.

8

16.    Independent Contractor.  Signature shall at all times act as an independent contractor and nothing contained herein shall be construed to create the relationship of employer and employee between the parties. It is mutually agreed and understood that all personnel engaged to perform the Services set forth in this Agreement are solely the employees and/or agents of Signature.

17.    Notices.  All notices to be given hereunder by either party shall be in writing and sent by U.S.Mail and/or facsimile addressed and/or transmitted to the other as follows:

    a.    In the case of Signature to:

> Signature Flight Support Corporation
> Attention:  Corporate Contracts Manager
> Signature Plaza
> 201 South Orange Avenue, Suite 1100
> Orlando, Florida  32801

--and--

> Signature Flight Support Corporation
> Attention: General Manager

> at the address set forth in each applicable Schedule I.

    b.    In the case of the Carrier to:

> British Airways PLC
> 75-20 Astoria Boulevard
> Jackson Heights, New York 11370
> Attention:  U.S. Counsel

or at such other address as either party may designate to the other by written notice in the manner provided above.

9

SCHEDULE I-A-2
SCHEDULE OF CHARGES
Effective October 1, 1996 - September 30, 1997

BRITISH AIRWAYS PLC                    Baltimore-Washington International Airport (BWI)

AIRCRAFT                                                                    ALL

| | |
|---|---|
| Into-Plane Fee (per scheduled flight) | $33.00 |
| Through-Put Fee (per gallon of Fuel delivered into the System) | $ 0.01 |
| Defueling Fee (per gallon) | $ 0.05 |
| Minimum Defueling Charge (per defuel request) | $150.00 |
| Aircraft Sumping Charge (per aircraft) | $ 5.00 |

NOTE 1: Signature IS the operator of the System at Baltimore-Washington International Airport.

NOTE 2: Exclude all applicable Airport concession fees and federal and state taxes.

In accordance with Sub-Paragraph 17(a) of the Main Agreement, such notices for Baltimore-Washington International Airport, Baltimore, Maryland shall be sent to the following address:

Signature Flight Support - Baltimore / Washington, Inc.
Attention: General Manager
Baltimore-Washington International Airport
P.O. Box 8786
Baltimore, Maryland 21240-9972

Signature Flight Support - Baltimore / Washington, Inc., a subsidiary of Signature Flight Support Corporation, and British Airways PLC (collectively, "the Parties") agree to the annexation of this Schedule of Charges to the Into-Plane Fuel Service Agreement (hereinafter, the "Main Agreement") dated June 1, 1993 for the period October 1, 1996 through September 30, 1997.

Other than the charges, terms, and conditions set forth above, the Parties agree that all terms and conditions of the Main Agreement shall be applicable to the Services performed and received at Baltimore-Washington International Airport.

By: _____          By: _____
William L. Ackerman                          Kevin S. Worley

Title: Vice President Fuel Purchasing and       Title:    Vice President – Airline Sales
Supply, North and Central America

SCHEDULE 1-A-3
SCHEDULE OF CHARGES
Effective October 1, 1997 - September 30, 1999

| BRITISH AIRWAYS PLC | Baltimore-Washington International Airport (BWI) |
|---|---|

| AIRCRAFT | ALL |
|---|---|

| Into-Plane Fee (per gallon, all gallons, effective 10/1/97 - 9/30/98) | $ 0.0065 |
| Into-Plane Fee (per gallon, all gallons, effective 10/1/98 - 9/30/99) | $ 0.01 |
| Through-Put Fee (per gallon of Fuel delivered into the System) | $ 0.01 |
| Defueling Fee (per gallon) | $ 0.05 |
| Minimum Defueling Charge (per defuel request) | $150.00 |
| Aircraft Sumping Charge (per aircraft) | $ 5.00 |

NOTE 1: Signature IS the operator of the System at Baltimore-Washington International Airport.

NOTE 2: Exclude all applicable Airport concession fees and federal and state taxes.

In accordance with Sub-Paragraph 17(a) of the Main Agreement, such notices for Baltimore-Washington International Airport, Baltimore, Maryland shall be sent to the following address:

    Signature Flight Support - Baltimore / Washington, Inc.
    Attention: General Manager
    Baltimore-Washington International Airport
    P.O. Box 8786
    Baltimore, Maryland 21240-9972

Signature Flight Support - Baltimore / Washington, Inc., a subsidiary of Signature Flight Support Corporation, and British Airways PLC (collectively, "the Parties") agree to the annexation of this Schedule of Charges to the Into-Plane Fuel Service Agreement (hereinafter, the "Main Agreement") dated June 1, 1993 for the period October 1, 1997 through September 30, 1999 and month to month thereafter.

Other than the charges, terms, and conditions set forth above, the Parties agree that all terms and conditions of the Main Agreement shall be applicable to the Services performed and received at Baltimore-Washington International Airport.

By: _William L. Ackerman_        By: _Kevin S. Worley_

William L. Ackerman                    Kevin S. Worley

Title: Vice President Fuel Purchasing and        Title:    Vice President – Airline Sales
Supply, North and Central America

SCHEDULE I-B-1
SCHEDULE OF CHARGES
Effective June 1, 1993 - May 31, 1996

BRITISH AIRWAYS PLC                                      Detroit Metropolitan Airport (DTW)

AIRCRAFT                                                                                          ALL

| Into-Plane Fee (per gallon, via tanker delivery) | June 1, 1993 - May 31, 1994 | $ 0.0200 |
| | June 1, 1994 - May 31, 1995 | $ 0.0208 |
| | June 1, 1995 - May 31, 1996 | $ 0.0216 |

Defuel Fee (per gallon)                                                            $ 0.05

Minimum Defuel Charge (per defuel service)                                    $150.00

NOTE 1: Signature IS the operator of the System at Detroit Metropolitan Airport.
NOTE 2: Excludes all applicable Airport concession fees and federal and state taxes.

In accordance with Sub-Paragraph 17(a) of the Main Agreement, such notices for Detroit Metropolitan Airport, Detroit, Michigan shall be sent to the following address:

Signature Flight Support Corporation
Attention: General Manager
Detroit Metropolitan Airport
Building #348
Detroit, Michigan  48242-1497

Signature Flight Support Corporation and British Airways PLC (collectively, "the Parties") agree to the annexation of this Schedule of Charges to the Into-Plane Fuel Service Agreement (hereinafter, the "Main Agreement") dated June 1, 1993 for the period June 1, 1993 - May 31, 1996.

Other than the charges, terms, and conditions set forth above, the Parties agree that all terms and conditions of the Main Agreement shall be applicable to the Services performed and received at Detroit Metropolitan Airport.

By: _William L. Ackerman_          By: _Kevin S. Worley_
William L. Ackerman                              Kevin S. Worley

Title: Vice President Fuel Purchasing and          Title:     Vice President – Airline Sales
Supply, North and Central America

SCHEDULE I-B-2
SCHEDULE OF CHARGES
Effective June 1, 1996 - April 30, 1997

BRITISH AIRWAYS PLC                                    Detroit Metropolitan Airport (DTW)

AIRCRAFT                                                                                    ALL

Into-Plane Fee (per gallon, all gallons, via tanker delivery)                 $  0.0224

Through-Put Fee (per gallon)                                                  $  0.0075

Bonded Fuel Administration Fee (per gallon, for truck-deliveries only into Fuel storage) $  0.0055

Defuel Fee (per gallon)                                                       $  0.05

Minimum Defuel Charge (per defuel service)                                    $150.00

NOTE 1: Signature IS the operator of the System at Detroit Metropolitan Airport.
NOTE 2: Excludes all applicable Airport concession fees and federal and state taxes.

In accordance with Sub-Paragraph 17(a) of the Main Agreement, such notices for Detroit Metropolitan Airport, Detroit, Michigan shall be sent to the following address:

Signature Flight Support Corporation
Attention: General Manager
Detroit Metropolitan Airport
Building #348
Detroit, Michigan 48242-1497

Signature Flight Support Corporation and British Airways PLC (collectively, "the Parties") agree to the annexation of this Schedule of Charges to the Into-Plane Fuel Service Agreement (hereinafter, the "Main Agreement") dated June 1, 1993, for the period June 1, 1996 - April 30, 1997.

Other than the charges, terms, and conditions set forth above, the Parties agree that all terms and conditions of the Main Agreement shall be applicable to the Services performed and received at Detroit Metropolitan Airport.

BRITISH AIRWAYS PLC                          SIGNATURE FLIGHT SUPPORT
                                             CORPORATION

By: _____    By: _____
    William L. Ackerman                      Kevin S. Worley

Title: Vice President Fuel Purchasing and    Title:    Vice President – Airline Sales
       Supply, North and Central America

SCHEDULE I-B-3
SCHEDULE OF CHARGES
Effective May 1, 1997 - May 31, 1999

| BRITISH AIRWAYS PLC | Detroit Metropolitan Airport (DTW) |
|---|---|

| AIRCRAFT | ALL |
|---|---|

| Into-Plane Fee (per gallon, all gallons, via tanker delivery) | $  0.02 |
| Defuel Fee (per gallon) | $  0.05 |
| Minimum Defuel Charge (per defuel service) | $150.00 |

NOTE 1: Excludes all applicable Airport concession fees and federal and state taxes.

In accordance with Sub-Paragraph 17(a) of the Main Agreement, such notices for Detroit Metropolitan Airport, Detroit, Michigan shall be sent to the following address:

Signature Flight Support Corporation
Attention: General Manager
Detroit Metropolitan Airport
Building #348
Detroit, Michigan 48242-1497

Signature Flight Support Corporation and British Airways PLC (collectively, "the Parties") agree to the annexation of this Schedule of Charges to the Into-Plane Fuel Service Agreement (hereinafter, the "Main Agreement") dated June 1, 1993, for the period May 1, 1997 through May 31,1999 and month to month thereafter.

Other than the charges, terms, and conditions set forth above, the Parties agree that all terms and conditions of the Main Agreement shall be applicable to the Services performed and received at Detroit Metropolitan Airport.

BRITISH AIRWAYS PLC

By: _____
William L. Ackerman

Title: Vice President Fuel Purchasing and
Supply, North and Central America

SIGNATURE FLIGHT SUPPORT
CORPORATION

By: _____
Kevin S. Worley

Title:    Vice President – Airline Sales

SCHEDULE I-C-2
SCHEDULE OF CHARGES
Effective October 1, 1996 - September 30, 2000

BRITISH AIRWAYS PLC                              Seattle-Tacoma International Airport (SEA)

AIRCRAFT                                                                                    ALL

Into-Plane Fee (per gallon, via tanker delivery) October 1, 1996 - September 30, 1997   $0.0075
                                                 October 1, 1997 - September 30, 2000   $0.0085

Defuel Fee (per gallon)                                                          $  0.05

Minimum Defuel Charge (per defuel service)                                      $ 150.00

NOTE 1:  Signature IS NOT the operator of the System at Seattle-Tacoma International Airport.

NOTE 2:  Excludes all applicable Airport fees, concession fees and federal and state taxes.

In accordance with Sub-Paragraph 17(a) of the Main Agreement, such notices for Seattle-Tacoma International Airport, Seattle, Washington shall be sent to the following address:

    Signature Flight Support - Seattle, Inc.
    Attention:  General Manager
    Seattle-Tacoma International Airport
    18740 Fillstand Road
    Seattle, Washington  98158

Signature Flight Support - Seattle, Inc., a subsidiary of Signature Flight Support Corporation, and British Airways PLC (collectively, "the Parties") agree to the annexation of this Schedule of Charges to the Into-Plane Fuel Service Agreement (hereinafter, the "Main Agreement") dated June 1, 1993 for the period October 1, 1996 - September 30, 2000 and month to month thereafter.

Other than the charges, terms, and conditions set forth above, the Parties agree that all terms and conditions of the Main Agreement shall be applicable to the Services performed and received at Seattle-Tacoma International Airport.

BRITISH AIRWAYS PLC                         SIGNATURE FLIGHT SUPPORT -
                                            SEATTLE, INC.
By:  _____          By:  _____
        William L. Ackerman                    Kevin S. Worley

Title:  Vice President Fuel Purchasing and   Title:    Vice President – Airline Sales
        Supply, North and Central America

SCHEDULE I-D-1
SCHEDULE OF CHARGES
Effective August 1, 1993 – July 31, 1995

BRITISH AIRWAYS PLC                    Boston-Logan International Airport (BOS)

AIRCRAFT                                                              ALL

| | |
|---|---|
| Into-Plane Fee (per gallon, via hydrant delivery) | $ 0.0290 |
| Into-Plane Fee (per gallon, via tanker delivery) | $ 0.0334 |
| Through-Put Fee (per gallon) | $ 0.0075 |
| Bonded Fuel Administration Fee (per gallon) | $ 0.0055 |
| Defuel Fee (per gallon) | $ 0.15 |
| Minimum Defuel Charge (per defuel service) | $150.00 |

NOTE 1: Signature IS the operator of the System at Boston-Logan International Airport.

NOTE 2: Excludes all applicable Airport fees, concession fees and federal and state taxes.

In accordance with Sub-Paragraph 17(a) of the Main Agreement, such notices for Boston-Logan International Airport, Boston, Massachusetts shall be sent to the following address:

Signature Flight Support Corporation
Attention: General Manager
Boston-Logan International Airport
60 Logan - South Harborside
East Boston, Massachusetts 02128

The Parties agree to the annexation of this Schedule of Charges to the Into-Plane Fuel Service Agreement (hereinafter, the "Main Agreement") dated June 1, 1993, effective for the term August 1, 1993 through July 31, 1995.

Other than the charges, terms, and conditions set forth above, the Parties agree that all terms and conditions of the Main Agreement shall be applicable to the Services performed and received at Boston-Logan International Airport.

BRITISH AIRWAYS PLC                  SIGNATURE FLIGHT SUPPORT
                                     CORPORATION

By: _____          By: _____
    William L. Ackerman                  Kevin S. Worley

Title: Vice President Fuel Purchasing and    Title:    Vice President – Airline Sales
       Supply, North and Central America

SCHEDULE I-D-2
SCHEDULE OF CHARGES
Effective August 1, 1995 – May 14, 1997

BRITISH AIRWAYS PLC                                    Boston-Logan International Airport (BOS)

| AIRCRAFT | ALL |
|---|---|
| Into-Plane Fee (per gallon, via hydrant delivery) | $  0.0240 |
| Into-Plane Fee (per gallon, via tanker delivery) | $  0.0284 |
| Through-Put Fee (per gallon) | $  0.0075 |
| Bonded Fuel Administration Fee (per gallon) | $  0.0055 |
| Defuel Fee (per gallon) | $  0.05 |
| Minimum Defuel Charge (per defuel service) | $150.00 |

NOTE 1: Signature IS the current operator of the System at Boston-Logan International Airport.

NOTE 2: Excludes all applicable Airport fees, concession fees and federal and state taxes.

NOTE 3: In the event the monthly gallonage deviates from the volume of Fuel required by the Carrier for the month of July, 1995 by a factor of plus or minus ten percent (10%) or more for three (3) consecutive months, both Signature and the Carrier (collectively, the "Parties") reserve the right to renegotiate the prevailing into-plane fee upon furnishing written notice of such intent.

NOTE 4: Signature agrees to be solely responsible for all costs incurred as a result of hydrant cart modifications necessary to service Carrier's Boeing 777 aircraft.

NOTE 5: Through-Put fees and Bonded Fuel Administration Fees to be billed through fuel supplier until further notice.

In accordance with Sub-Paragraph 17(a) of the Main Agreement, such notices for Boston-Logan International Airport, Boston, Massachusetts shall be sent to the following address:

Signature Flight Support Corporation
Attention: General Manager
Boston-Logan International Airport, 60 Logan - South Harborside
East Boston, Massachusetts 02128

The Parties agree to the annexation of this Schedule of Charges to the Into-Plane Fuel Service Agreement (hereinafter, the "Main Agreement") dated June 1, 1993, effective for the term August 1, 1995 through May 14, 1997.

Other than the charges, terms, and conditions set forth above, the Parties agree that all terms and conditions of the Main Agreement shall be applicable to the Services performed and received at Boston-Logan International Airport.

BRITISH AIRWAYS PLC                         SIGNATURE FLIGHT SUPPORT CORP.

By: _____          By: _____
      William L. Ackerman                         Kevin S. Worley

Title: Vice President Fuel Purchasing and       Title:    Vice President -- Airline Sales
       Supply, North and Central America

SCHEDULE 1-D-3
SCHEDULE OF CHARGES
Effective May 15, 1997 – July 31, 2000

BRITISH AIRWAYS PLC                                Boston-Logan International Airport (BOS)

**AIRCRAFT**                                                                              **ALL**

| | |
|---|---|
| Into-Plane Fee (per gallon, via hydrant delivery) | $ 0.0200 |
| Into-Plane Fee (per gallon, via tanker delivery) | $ 0.0244 |
| Through-Put Fee (per gallon) | $ 0.01 |
| Bonded Fuel Administration Fee (per gallon) | $ 0.004675 |
| Defuel Fee (per gallon) | $ 0.05 |
| Minimum Defuel Charge (per defuel service) | $150.00 |

NOTE 1: Signature IS the current operator of the System at Boston-Logan International Airport.

NOTE 2: Excludes all applicable Airport fees, concession fees and federal and state taxes.

NOTE 3: In the event the monthly gallonage deviates from the volume of Fuel required by the Carrier for the month of July, 1995 by a factor of plus or minus ten percent (10%) or more for three (3) consecutive months, both Signature and the Carrier (collectively, the "Parties") reserve the right to renegotiate the prevailing into-plane fee upon furnishing written notice of such intent.

NOTE 4: Through-Put fees and Bonded Fuel Administration Fees to be billed through fuel supplier until further notice.

In accordance with Sub-Paragraph 17(a) of the Main Agreement, such notices for Boston-Logan International Airport, Boston, Massachusetts shall be sent to the following address:

Signature Flight Support Corporation
Attention: General Manager
Boston-Logan International Airport, 60 Logan - South Harborside
East Boston, Massachusetts 02128

The Parties agree to the annexation of this Schedule of Charges to the Into-Plane Fuel Service Agreement (hereinafter, the "Main Agreement") dated June 1, 1993, effective for the term May 15, 1997 through July 31, 2000.

Other than the charges, terms, and conditions set forth above, the Parties agree that all terms and conditions of the Main Agreement shall be applicable to the Services performed and received at Boston-Logan International Airport.

BRITISH AIRWAYS PLC                               SIGNATURE FLIGHT SUPPORT CORP.

By: _William L. Ackerman_                By: _Kevin S. Worley_
       William L. Ackerman                              Kevin S. Worley

Title: Vice President Fuel Purchasing and      Title:    Vice President – Airline Sales
       Supply, North and Central America

SCHEDULE I-E-1
SCHEDULE OF CHARGES
Effective April 1, 1998 - March 31, 2001

BRITISH AIRWAYS PLC                                 Charlotte-Douglas International Airport (CLT)

AIRCRAFT                                                                                          ALL

| | |
|---|---|
| Into-Plane Fee (per gallon, via hydrant cart delivery) | $ 0.0085 |
| Thru-Put Fee (per gallon) | $ 0.007 |
| (This is a pass -through fee to the System Operator AGI.) | |
| Defuel Fee (per gallon) | $ 0.05 |
| Minimum Defuel Charge (per defuel service) | $150.00 |

NOTE 1: Signature IS NOT the operator of the System at Charlotte-Douglas International Airport.

NOTE 2: Excludes all applicable Airport fees, concession fees and federal and state taxes.

In accordance with Sub-Paragraph 17(a) of the Main Agreement, such notices for Charlotte-Douglas International Airport, Charlotte, North Carolina shall be sent to the following address:

Signature Flight Support - Charlotte, Inc.
Attention: General Manager
Charlotte-Douglas International Airport
5400 Airport Drive
Charlotte, North Carolina 28208

Signature Flight Support - Charlotte, Inc., a subsidiary of Signature Flight Support Corporation, and British Airways PLC (collectively, "the Parties") agree to the annexation of this Schedule of Charges to the Into-Plane Fuel Service Agreement (hereinafter, the "Main Agreement") dated June 1, 1993 for the period April 1, 1998 - March 31, 2001.

Other than the charges, terms, and conditions set forth above, the Parties agree that all terms and conditions of the Main Agreement shall be applicable to the Services performed and received at Charlotte-Douglas International Airport.

BRITISH AIRWAYS PLC

By: _____
    Holly DeWitt-Vargas

Title: Coordinator Fuel Administration
       North America

SIGNATURE FLIGHT SUPPORT -
CHARLOTTE, INC.

By: _____
    Kevin S. Worley

Title:   Vice President of Airlines Sales

## SCHEDULE II

### INSURANCE AND PAYMENT TERMS

Effective June 1, 1993 – February 28, 1999

### BRITISH AIRWAYS PLC

INSURANCE COVERAGES:  Signature Flight Support Corporation

A.    Statutory Worker's Compensation and Employer's Liability Insurance to a limit of One Million Dollars ($1,000,000) liability.

B.    Comprehensive Airport and Aircraft General Liability Insurance insuring against property damage and bodily injury in the amount of Fifty Million Dollars ($50,000,000) combined single limit.

C.    Automobile Liability Insurance in the amount of Five Million Dollars ($5,000,000) per occurrence.

PAYMENT TERMS:

Settlement of account shall be effected by Signature submitting a weekly invoice to the Carrier for Services furnished and the Carrier forwarding payment to the applicable local Signature address net thirty (30) days from receipt of invoice.

BRITISH AIRWAYS PLC

By: _____
William L. Ackerman

Title: Vice President Fuel Purchasing and
Supply, North and Central America

SIGNATURE FLIGHT SUPPORT CORPORATION

By: _____
Kevin S. Worley

Title:    Vice President – Airline Sales

## EXHIBIT A

### BRITISH AIRWAYS PLC
### FUEL SPECIFICATION AND TECHNICAL REQUIREMENTS
### ISSUE # 4 - EFFECTIVE DECEMBER 31, 1991

## FUELING PROCEDURES AND EQUIPMENT REQUIREMENTS

2.1     Pressure fueling shall normally be used for servicing the Carrier's Aircraft ("Aircraft"). The maximum permitted Fuel pressure at the Aircraft couplings is 350 kN/ m2  (50 psi), unless instructed otherwise by the Carrier's representative.

2.3     Signature's fueling equipment shall be capable of delivering into any of the Aircraft any quantity of Fuel as may be required by the Carrier at a fueling rate compatible with the operational requirements of the Carrier.

If the Fuel being delivered to the Aircraft does not contain an approved anti-static dissipater additive, then the delivery flow rate must be restricted such that it does not exceed 350 U.S. Gallons per minute per refueling hose.

Signature will constantly liaise with the Carrier to ensure that, at all times, the capability and handling of fueling equipment is adequate to permit the entire fueling operation of each Aircraft-to be completed in a manner which shall not adversely affect the scheduled departure time for such Aircraft.

This does not in any way derogate from Signature's obligation to carry out any fueling as quickly as is practical with the fueling facilities available.

2.5     Signature shall ensure that all the equipment used for the services described in the Into-Plane Fuel Service Agreement attached hereto satisfies the Carrier's requirements with regards to safety and efficiency and is maintained in a safe, reliable and accurate condition.

2.6     All dispensing equipment for Fuel shall:

(a)     embody reliable delivery pressure control, capable of maintaining a steady and correct fuel pressure at the Aircraft couplings;

.· (b)     be so designed as to ensure that all Fuel passing through the "liters/Gallons Delivered" meter shall necessarily pass into the hoses connecting the dispenser and Aircraft; and

(c)     have each hose permanently identified. The maximum shelf storage life of these hoses should be two (2) years and the maximum overall life ten (10) years, both periods to be measured from date of manufacture.

2.7     Facilities shall be provided by Signature on each Airport incorporated within this Agreement which will be available to the Carrier on short notice for the purpose of undertaking defueling and load adjustment to the Aircraft for operational and engineering purposes. Signature's defueling capabilities must be of sufficient quality and capacity to fulfill the standard requirements of the Carrier. When load

adjustment is required, Signature shall utilize its best and most diligent efforts to effect an on-time departure of the Aircraft to the extent possible. Every precaution shall be taken by Signature to safeguard the identity and quality of Fuel defueled from and re-delivered to the Aircraft. Carrier agrees to take possession of defueled product with the next available Aircraft.

The maximum permitted suction at the Aircraft coupling during defueling operations of the Aircraft is minus 75 Kn/m2 (-11 psi) unless instructed otherwise by the Carrier's representative.

2.8    When requested by the Carrier, Signature shall provide a sampling of the Fuel being delivered to the Aircraft, drawn from the appropriate fueling equipment. When taking the aforementioned sample, the following must be observed:

(a)    Mobile Fueler - Prior to taking the sample from the fuel tank's lowest point, any associated pipework must be flushed.

(b)    Hydrant Dispenser - Any Fuel remaining from the previous fueling must be flushed through by delivering into the Aircraft a quantity of Fuel equal to that contained in the dispenser (approximately 1000 liters) and drain pipework must be flushed before taking the sample. On completion of fueling, a sample shall then be drawn from the microfilter or filter/separator sump.

The sample will be used by the Carrier for a cleanliness check, for which purpose Signature will have facilities readily available to perform a qualitative check, to determine the extent of bulk and suspended free water and particulate matter in the Fuel.

This shall include the provision of a Shell chemical water detector kit or other device acceptable to the Carrier, as well as a clean stainless steel bucket or appropriate size clean glass jar.

The sample will also be used, when appropriate, to enable the Carrier's operating crew to determine the density of the sampled Fuel. Upon completion of all testing, Carrier shall dispose of the sampled Fuel in a manner consistent with prevailing Airport, State and Federal regulations.

2.9    If at any time Fuel contamination is suspected, Signature shall cooperate by giving every assistance in ascertaining the cause and in rectifying the situation consistent with ensuring the highest standards of safety and minimizing any operational inconvenience. Signature shall do everything possible to retain evidence likely to prove useful in an investigation and shall, pending disposal instructions from the Carrier, retain adequate quantities of the Fuel removed from the Aircraft tanks and fueling equipment drains. If the cause of the contamination is determined not to lie with Signature's facilities and/or fueling equipment, all costs associated with disposal of the contaminated Fuel shall be ultimately borne by the Carrier.

2.10    Signature shall provide and dispatch, as necessary, any Fuel samples requested by the Carrier and such samples shall be analyzed in a laboratory, to be nominated by the Carrier, who shall be responsible for organizing such analyses as they see fit to request. For this purpose, Signature shall have Fuel sample containers with facilities for labeling readily available. All costs associated with fuel sampling and subsequent testing shall be ultimately borne by the Carrier, unless such sampling and testing is a result of the sole negligence of Signature.

2.11    The Carrier's representative(s), in conjunction and concert with Signature's representative(s), to inspect any facilities of Signature at any time which are associated with the Services thereto performed under the terms and conditions of this Agreement.

2.12    The requirement for filtration is such that, during Aircraft fueling, all Fuel shall be subject to five (5) micrometer filtration or better. Filter monitors should be used whenever practical on dispensing equipment.

2.13    Signature shall take all precautions necessary to prevent damage to Carrier's aircraft and property and injury to Carrier's personnel. To this end, Signature shall be responsible at all times during delivery and removal of Fuel for compliance with current safety precautions prevailing at the time and place of fueling.

Signature's Fuel dispensing equipment, Fuel handling procedures, quality control standards and training of personnel, etc. shall be of the highest order and conform to the best current practice. All equipment, insofar as is reasonable to expect, shall be of the latest standard.

The foregoing shall be in accordance with or comparable with the standards of good fueling practice set forth by such authorities as the UK Departments of Trade and Industry, US National Fire Protection Association (NFPA), Flight Safety Foundation, Aviation Technical Services Committee of the American Petroleum Institute and the Institute of Petroleum London.

2.14    In the event more than one (1) Fuel grade is available on an Airport, suitable mechanical safeguards, such as selective couplings, shall be utilized to ensure that only the correct grade of Fuel can be delivered to the Aircraft. The Fuel grade and equipment identification set out in API Bulletin 1542 is to be adopted. Failing this, the Carrier reserves the right to specify an alternative means of identification which can be readily observed and understood by ground and aircraft operating crews in addition to any other designations or codes already in use by Signature.

2.15    Signature shall also accept any reasonable, additional and technical requirements and safeguards of the Carrier.

2.16    Signature shall make available to the Carrier its complete Quality Control Manual and other relevant instructions relating to fuels and fueling procedures for scrutiny and acceptance. Any subsequent amendments to these documents shall be made available to the Carrier upon implementation.

2.17    Signature shall provide the Carrier, on request, a record of the range and average density at fifteen (15) degrees Celsius and net specific energy of the Fuel delivered to the Aircraft.

**JS 44** (Rev. 11/04)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

BRITISH AIRWAYS, PLC

**(b)** County of Residence of First Listed Plaintiff    England
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)  617—241—3000
Richard P. Campbell and Kathleen M. Guilfoyle Campbell Campbell
Edwards and Conroy P.C. One Constitution Plaza, Boston, MA 02129

### DEFENDANTS

SIGNATURE FLIGHT SUPPORT, and its subsidiaries, and AIRCRAFT SERVICE INTERNATIONAL GROUP, INC.

County of Residence of First Listed Defendant    Florida
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

### V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Sections 1391(a) and 1532 (a)

Brief description of cause:
Defendant's refueling truck struck plaintiff's aircraft causing damages, lost income, etc.

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

### VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE  None    DOCKET NUMBER  None

DATE  7/12/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

# 05 - 11477 GAO

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. **Title of case (name of first party on each side only)**    British Airways, PLC v. Signature Flight Support

2. **Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).**

   | | I. | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. | |
   |---|---|---|---|
   | ☐ | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. | *Also complete AO 120 or AO 121 for patent, trademark or copyright cases |
   | ✓ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. | |
   | ☐ | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. | |
   | ☐ | V. | 150, 152, 153. | |

3. **Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.**

   N/A

4. **Has a prior action between the same parties and based on the same claim ever been filed in this court?**

   YES ☐    NO ✓

5. **Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?    (See 28 USC §2403)**

   YES ☐    NO ✓

   **If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?**

   YES ☐    NO ✓

6. **Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?**

   YES ☐    NO ✓

7. **Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).**

   YES ☐    NO ☐

   A.    **If yes, in which division do all of the non-governmental parties reside?**

   Eastern Division ☐    Central Division ☐    Western Division ☐

   B.    **If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?**

   Eastern Division ✓    Central Division ☐    Western Division ☐

8. **If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)**

   YES ☐    NO ✓

**(PLEASE TYPE OR PRINT)**

**ATTORNEY'S NAME**  Kathleen M. Guilfoyle,

**ADDRESS**  Campbell Campbell Edwards & Conroy, One Constitution Plaza, Boston, MA 02129

**TELEPHONE NO.**  617-241-3000

(CategoryForm.wpd  - 5/2/05)